O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| TONY VASQUEZ, | ) | CASE NO. CV 06-02093 RZ |
| Plaintiff, | ) ) | |
| vs. | ) ) | MEMORANDUM OPINION AND ORDER |
| MICHAEL J. ASTRUE, Commissioner of Social Security Administration, | ) ) ) | |
| Defendant. | ) ) | |

Because none of Plaintiff's arguments challenging the underlying step-five denial of his claim for disability benefits is persuasive, the Court will affirm.

**I.**

**NON-"SEVERE" FINDING AS TO MENTAL IMPAIRMENTS**

Plaintiff argues that the Administrative Law Judge erred in finding that he did not have a "severe" mental impairment, based largely on the findings of state agency physician Lydia Mallare, M.D. The regulations do not define a "severe" impairment. Instead, they state what a *non*-severe impairment is: one that does not significantly limit physical or mental ability to do basic work activities. 20 C.F.R. § 404.1521. The basic work activities are "the abilities and aptitudes necessary to do most jobs," including various physical and mental activities. *Id.* The requirement of having a severe impairment

performs a gatekeeping function, screening out frivolous complaints. *Bowen v. Yuckert*, 482 U.S. 137, 153 (1987). In its internal procedures, the Social Security Administration assesses an impairment as "non-severe" if it has no more than a minimal effect on the individual's ability to do basic work functions. SSR 85-28. This minimalist treatment has received the Courts' imprimatur. *Yuckert v. Bowen*, 841 F.2d 303, 306 (9th Cir. 1988); *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996). Thus, the requirement that a claimant have a severe impairment has been transmogrified into a requirement that the claimant have an impairment that is not very severe at all — it simply must have more than a minimal effect on his or her ability to do basic work functions. When the Commissioner rests his decision on the failure to satisfy the severity requirement, that decision, as with any other, must rest on substantial evidence within the record. *Smolen v. Chater, supra,* 80 F.3d at 1289-90.

   Dr. Mallare's opinion, as manifested on a check-the-boxes Mental Residual Functional Capacity Assessment form [Administrative Record ("AR") 225-26], tends to support the non-severe finding, contrary to Plaintiff's assertion. In twenty assessed categories of work-related activities, Dr. Mallare found Plaintiff "Moderately Limited" (but not "Markedly" so) in the following four, to which Plaintiff points in his brief:

  \*  ability to remember locations and work-like procedures;

  \*  ability to understand and remember *detailed* instructions (although Dr. Mallare assessed no significant limitations as to *simple* instructions);

  \*  ability to carry out *detailed* instructions (although, again, the doctor found no significant limitation in Plaintiff's ability to carry out *simple* instructions);

  \*  ability to maintain attention and concentration for prolonged periods.

AR 225-26. Plaintiff does not note that the same doctor found him "Not Significantly Limited" in the remaining 16 assessed categories. *Id*. Moreover, the Administrative Law Judge did not conclude that Plaintiff has *no* mental restrictions on his ability to work. On the contrary, she found that Plaintiff had several mild mental limitations on his ability to work, in keeping with Dr. Mallare's findings and other record evidence, including the

report of psychologist Jeannette K. Townsend, Ph.D.  *See* AR 18 (mild difficulties in social functioning, including co-worker interaction; mild difficulties in concentration and pace; mild difficulties in retaining instructions; but able to perform simple, repetitive tasks and to complete normal day's work), AR 185-90 (Townsend report).

        At best, Plaintiff cherry-picks a few outlying bits of evidence from which the Administrative Law Judge might have found he had a "severe" impairment.  Perhaps so, but that is not the test.  The test is whether the finding that the Administrative Law Judge did make, that the impairment is *not* severe, is backed by substantial evidence.  That test has been satisfied.

## II.
## COMPLETENESS OF HYPOTHETICAL QUESTION

        Plaintiff's second argument is that the hypothetical question posed to the vocational expert was incomplete – and therefore that its answer cannot supply substantial evidence about the jobs Plaintiff is capable of performing – because it lacked the "severe" mental limitations discussed immediately above.  Because the foregoing argument was unpersuasive, this one necessarily fails too.

## III.
## REASONING LEVEL

        Next, Plaintiff argues that he cannot perform the two jobs identified by the vocational expert at step five, namely sales attendant and office helper, because those jobs, as defined by the DICTIONARY OF OCCUPATIONAL TITLES, require a "reasoning level" of 3 and 2 respectively.  He argues that his limitation, as found by the Administrative Law Judge, to simple tasks and instructions is consistent with a reasoning level of 1, not 2 or 3.  Although Plaintiff may or may not be correct as to the sales attendant listing (with a level of 3), he is wrong about the office helper listing.

A reasoning level of 2 corresponds with an ability to follow "detailed but uninvolved instructions." DICTIONARY, vol. II at 1011. Such is not inconsistent with an ability to perform simple tasks. The DICTIONARY definition itself is somewhat ambiguous. While the explanation of reasoning level 2 includes the word "detailed," it also includes the somewhat contrary word "uninvolved." The definition continues, "Deal with problems involving *a few* concrete variables in or from standardized situations. *Id.* (emphasis added). Confronted with this ambiguity, at least three courts, including this one, have concluded in published opinions that a claimant whose Residual Functional Capacity (RFC) restricts him or her to simple, repetitive tasks still can perform work requiring a reasoning level of 2. *See Hackett v. Barnhart*, 395 F.3d 1168, 1176 (10th Cir. 2005) (although level *three* reasoning was incompatible with RFC for "simple and routine work tasks," "level-two reasoning appears more consistent with Plaintiff's RFC"); *Meissl v. Barnhart*, 403 F. Supp. 2d 981, 984 (C.D. Cal. 2005); *Flaherty v. Halter*, 182 F. Supp. 2d 824, 850 (D. Minn. 2001), *quoted and followed in Meissl*. As Judge Stephen G. Larson explained for this Court, "the instructions would be uninvolved – that is, not [requiring] a high level of reasoning." *Meissl,* 403 F. Supp. 2d at 984.

Here, any possible error in finding that Plaintiff could work as a sales attendant was harmless, for Plaintiff demonstrates no such infirmity in the alternative finding that he could work as an office helper.

## IV.
## THIRD-PARTY QUESTIONNAIRE

Plaintiff argues that the Administrative Law Judge erred in not discussing, and perhaps not taking into account, the questionnaire submitted by his friend Linda Luna. AR 127-32. An Administrative Law Judge is not required to mention every item in a claimant's record; a failure to address some items is not tantamount to a failure to consider them or a rejection of them. *Howard v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003). Such testimony can supply useful information about how a claimant's alleged impairments

affect his ability to engage in gainful employment, *see* 20 C.F.R. § 404.1513(d)(4), however, and the Administrative Law Judge thus may reject such testimony only for specific reasons germane to the particular witness. *See Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993).

As a preliminary matter, Plaintiff fails to cite any portion(s) of the questionnaire as supporting his claim. The Court will not construct his argument for him or guess which parts of it putatively aid the claim, and Plaintiff thus fails to show how the questionnaire's statements are at odds with the Administrative Law Judge's opinion. In any event, the questionnaire essentially tracks Plaintiff's own subjective account; in other words, it was cumulative. The Administrative Law Judge found Plaintiff less than fully credible, and Plaintiff does not challenge that finding here. That lack-of-credibility finding undercuts the impact of the cited questionnaire, much of which necessarily derives from Plaintiff's subjective accounts (as related or displayed by him to Ms. Luna). The Court thus "can confidently conclude that no reasonable ALJ, when fully crediting the [undiscussed lay] testimony, could have reached a different disability determination." *Stout v. Commissioner*, 454 F.3d 1050, 1056 (9th Cir. 2006). Any possible error in failing to discuss the questionnaire therefore was harmless. *Id*.

## V.
## OBESITY

Finally, Plaintiff argues that the Administrative Law Judge failed to give express consideration to whether his obesity lessened his ability to work in ways not already reflected in the limitations assessed in the underlying opinion. The Court disagrees that reversible error occurred.

In *Celaya v. Halter*, 332 F.3d 1177 (9th Cir. 2003), the Court remanded for further development of the record as to plaintiff's obesity as a factor contributing to disability, even though the plaintiff had not explicitly raised it as an impairment. However, as the Ninth Circuit subsequently noted in *Burch v. Barnhart*, 400 F.3d 676 (9th Cir. 2005),

the remand decision in *Celaya* was premised on three factors, none of which was present in *Burch*: (1) the plaintiff had raised the impairment implicitly, if not explicitly; (2) the impairment was close to listing-level severity (from the era prior to October 25, 1999, when obesity alone could cause disability); and (3) the plaintiff appeared without counsel. Thus, it appears that a central concern of *Celaya* was that the Administrative Law Judge might simply have overlooked the *pro se* claimant's obesity as a potential aggravating factor.

Here, at least the second and third *Celaya* factors are absent. At a height of 65 to 65.5 inches and a weight of 204 to 205 pounds, Plaintiff was not close to listing-level heaviness, which would require that he weigh 276 pounds. *See* former 20 C.F.R. § 404 Subpart P, Appendix 1, ¶ 9.09. Also, Plaintiff was represented by counsel at the pre-remand administrative hearing, as he is before this Court.[1] Surely counsel, experienced in Social Security law, could have raised the obesity argument and developed it further administratively had there been something more to this point. Two additional facts reassure this Court that a *Celaya*-type remand is improper and unnecessary.

First, Plaintiff's heaviness plainly was not overlooked in the administrative proceedings, either by the Administrative Law Judge or otherwise. The underlying opinion, in summarizing various medical reports, repeatedly makes note of Plaintiff's weight problems, the importance of improving his diet and exercise regimen, and the relationship between his obesity and other conditions, such as hypertension. *See*, *e.g.*, AR 15 (at July 23, 2003 appointment, Plaintiff "was reminded of a low-salt diet, weight reduction, and regular physical exercise goals. He was offered a referral to a dietician, but

---

[1] The record is not entirely clear as to whether Larry Badajos, who represented Plaintiff at both the pre-remand administrative hearing in 2003 and the 2005 post-remand hearing, is an attorney at law. The first transcript and ensuing opinion indicate that Mr. Badajos is an attorney, AR 38, 275, as does the transcript of the second hearing. AR 415. But the most recent *opinion* expressly describes Mr. Badajos as a "non-attorney." AR 11. The exact status of Mr. Badajos, however, is not decisive. Even if he were not an attorney, the Court believes that no obesity-related error justifying reversal occurred.

he declined"), 17 (October 3, 2005 appointment) (Plaintiff "was counseled to reduce his weight to within 10 percent of the ideal body weight for him, and he was told of the possible improvements in blood pressure with even 5 to 10 pounds of weight loss").

Second, Plaintiff does not indicate just what obesity-related evidence in the record (a) the Administrative Law Judge failed to consider, which (b) allegedly establishes functional limitations exceeding those already noted in the opinion.

In sum, Plaintiff's assertions of obesity-related error fall short of justifying reversal or remand.

## VI.
## CONCLUSION

For the foregoing reasons, the underlying decision is affirmed.

DATED: September 5, 2007

_____
RALPH ZAREFSKY
UNITED STATES MAGISTRATE JUDGE